IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Number: 3:21-cr-083-JAG |
| ) | |
| v. ) | |
| ) | |
| SUSAN MAY KEIM, ) | |
| RUSSELL JOHN KEIM, SR., and ) | |
| RODNEY GALE WILSON ) | |
| Defendants. ) | |

**UNITED STATES' REPLY TO DEFENDANT WILSON'S RESPONSE TO ITS MOTIONS FOR ORDERS FINDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE AND COMPELLING DEFENDANTS' PRE-TRIAL DISCLOSURE OF INTENT TO ASSERT AN ADVICE-OF-COUNSEL DEFENSE**

The United States has filed a Motion for an Order Finding a Waiver of Attorney-Client Privilege as to Defendant Rodney Gale Wilson (the "Waiver Motion"), Waiver Mot. (ECF No. 65), and a Motion for an Order Compelling Defendants' Pre-Trial Disclosure of Intent to Assert an Advice of Counsel Defense and Disclosure of Relevant Discovery (the "Notice Motion"), Notice Mot. (ECF No. 66).  The Waiver Motion discussed in detail the principles governing waiver of attorney-client privilege, particularly through voluntary disclosure of otherwise privileged information, *see* Waiver Mot. at 3–5, and the Notice Motion discussed at length a defendant's burden of production as to the advice-of-counsel defense, the discovery obligations placed on a defendant who asserts such a defense, and a court's discretion to order pre-trial notice and discovery relating to the defense, *see* Notice Mot. at 4–11.  Wilson's response to both motions largely ignores or elides these discussions.  Def.'s Resp. (ECF No. 70).  Instead, Wilson misrepresents the terms of a proffer agreement that governed a voluntary pre-indictment interview in which Wilson participated while accompanied by two attorneys, *see id.* at 3, and repeats a baseless allegation of government misconduct he has leveled previously, *see id.* at 4–6.

I.  **Discussion**

    A.  **The proffer agreement permits the United States to make derivative use of, and pursue investigative leads suggested by, information provided by Wilson with respect to Attorney A.**

Wilson first argues that no waiver of attorney-client privilege occurred when he related his purported conversation with Attorney A during the interview with the United States on November 8, 2019, because his statements were made pursuant to a proffer agreement. Def.'s Resp. at 2–3. Wilson also contends the United States violated that agreement by contacting Attorney A and requesting that he preserve documents relating to the issues Wilson raised in the interview. *Id.* at 3. Wilson premises these assertions on a gross misrepresentation of the terms of the proffer agreement.

A proffer agreement, like any other contract, is governed by its express language. *See, e.g. United States v. Gillion*, 704 F.3d. 284, 292 (4th Cir. 2012) ("[A] proffer agreement operates like a contract."); *United States v. Lopez*, 219 F.3d 343, 346 (4th Cir. 2000) (applying contract law principle that express terms of proffer agreement govern); *accord United States v. Cobblah*, 118 F.3d 549, 551 (7th Cir. 1997) ("As a contract, a proffer agreement must be enforced according to its terms. It is the language of the contract that binds the parties."). Yet Wilson contends that the United States, pursuant to the proffer agreement, "promised not to directly use information provided to his detriment." Def.'s Resp. at 3. This assertion is demonstrably false. The proffer agreement—signed by Wilson and Wilson's counsel—actually contains only two limitations on the United States' use of information provided during the interview:

> [E]xcept as provided below, in any prosecution brought by the United States against your client, no statements or other information provided by you or your client during the interview **will be admissible against your client in the government's case-in-chief or at sentencing**.

*See* Ex. 1 (Wilson Proffer Agreement) at 1 (emphasis added). This paragraph plainly provides that

the United States cannot use Wilson's proffer statements (a) during its case-in-chief at trial, and (b) at sentencing, but very clearly places no other restrictions on the use of Wilson's statements. *Id.*[1] In fact, as the very next paragraph provides:

> [T]he United States will be permitted **to make derivative use of, and pursue any investigative leads suggested by, any statements or information provided by your client in the interview**. Such derivative information can be used against your client at any stage of any criminal or civil proceeding.

*Id.* (emphasis added).

Wilson further asserts that the United States' request for a finding that he waived attorney-client privilege through his disclosures regarding Attorney A is a "far from any derivative use . . . of the information" provided during the proffer, Def.'s Resp. at 3, but that, too, is demonstrably false. In his response, Wilson fails to mention that the term "make derivative use of" is directly followed by the phrase "and pursue any investigative leads suggested by . . . any statements or information provided by [Wilson] in the interview." Ex. at 1. Read in its entirety and by its actual terms, the proffer agreement expressly *allows* the United States to follow the investigative lead that Wilson himself provided with respect to Attorney A, which resulted in a request for Attorney A to preserve information relating to his representation of Wilson as well as in the filing of the Waiver Motion.[2] Wilson's assertion that the United States has breached the proffer agreement by

---

[1] Curiously, Wilson asserts that "the key provision in the agreement [is] that no statements or other information provided by Wilson will be used against your client," Def. Resp. at 3, and then in a footnote clarifies that "[t]he exact word is 'admissable' [*sic*] against your client," *id.* at 3, n.2. The terms of the proffer agreement, however, are quite clear. *See* Ex. 1 at 1. In fact, the document expressly provides that "[n]o promises, agreements or understandings exist between the parties other than those set forth in this agreement." *Id.* at 2.

[2] In alleging that this request somehow constituted government misconduct, Wilson points to provisions of the Justice Manual—previously known as the United States Attorneys' Manual—and ABA Model Rules of Professional Conduct relating to the issuance of a subpoena to an attorney. Def.'s Resp. at 5. But there has never been any discussion of a grand jury subpoena issued to Attorney A. *Cf.* Notice Mot.; Waiver Mot.; Gov't Mot. to Quash (ECF No. 41). Regardless, and at risk of stating the obvious, Wilson is not privy to the United States' internal procedures and what approvals have or have not been sought in this case.

these actions is flatly incorrect and in no way undermines the vast body of case law supporting a finding that his voluntary disclosures waived privilege with respect to Attorney A.

>    B. **Wilson's meritless allegations of misconduct with respect to Attorney A are irrelevant to whether he should be required to provide notice of an advice-of-counsel defense.**

Along similar lines, Wilson's response wholly fails to address the extensive case law cited in the Notice Motion.[3] *See generally* Def.'s Resp. Rather, he simply rehashes the same baseless misconduct allegations he has made previously in similarly inappropriate settings. *See* Def.'s Opp'n to Mot. to Quash (ECF No. 43) at 6–7, 9–10.[4] Those allegations are completely irrelevant to the issue raised in the Notice Motion. However, because Wilson has again leveled this baseless allegation, the United States will briefly address it once again. The Fourth Circuit has adopted what it calls the "classic test" for determining the existence of attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to

---

Lest this statement of fact trigger some frivolous filing by a defendant, it also bears mention that the Justice Manual "provides only *internal* Department of Justice guidance. *It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural,* enforceable at law by any party in any matter civil or criminal." Justice Manual § 1–1.200 (emphasis added); *cf. United States v. Lopez-Matias*, 522 F.3d 150, 155–56 (1st Cir. 2008); *United States v. Myers*, 123 F.3d 350, 355–56 (6th Cir. 1997); *United States v. Montoya*, 45 F.3d 1286, 1295 (9th Cir. 1995); *United States v. Le*, 306 F. Supp. 2d 589, 592 (E.D. Va. 2004).

[3] In his response, Wilson again states that the assertion of an advice-of-counsel is for defense counsel, not the United States, to determine. Def.'s Resp. at 4. Yet it is ultimately the *Court's* decision whether Wilson can meet the burden of production as that defense. *See, e.g.*, *United States v. Westbrooks*, 780 F.3d 593, 595–96 (4th Cir. 2015); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982); *United States v. Dallmann*, 433 F. Supp. 3d 804, 810 (E.D. Va. 2020); *accord United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998) (explaining that a district court may properly decline to give an advice-of-counsel instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation"). And should he decide to assert such a defense, the United States is entitled to notice and discovery for the reasons set forth in the Notice Motion.

[4] Although a responsive pleading to a motion to quash was an inappropriate forum in which to litigate an alleged violation of attorney-client privilege, the United States nonetheless addressed this baseless allegation briefly in its reply. *See* Gov't Reply on Mot. to Quash (ECF No. 44) at 5–7. It also invited Wilson to "file an appropriate motion with citation to both legal authority and facts that support his allegations [of an intrusion into the attorney-client privilege] and specify the relief he seeks." *Id.* at 5. To date, he has failed to do so.

4

> become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (internal quotations and citations omitted)). As the proponent of the privilege, Wilson bears the burden of establishing every element of this multi-part test. *Id.* Yet his response here (again) does not even mention the test, much less establish that the information *voluntarily* provided to the case agent by Attorney A met the test's exacting standard. But even cursory application of the test to these facts reveals that the information at issue was not privileged.

First, as the United States has already discussed at length, Wilson cannot meet his burden of proving that he has not waived the privilege. *See* Waiver Mot. at 3–5. Furthermore, the attorney-client privilege applies only to "[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance," *Fisher v. United States*, 425 U.S. 391, 403 (1976); *cf. Hawkins*, 148 F.3d at 383 (emphasizing that "the attorney-client privilege is to be narrowly construed"), such that "[t]he identity of the client . . . and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege," *In re Grand Jury Subpoena*, 204 F.3d 516, 520 (4th Cir. 2000) (internal quotation marks omitted); *see also, e.g.*, *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003) (noting, for example, the fact that an attorney "provid[ed] advice regarding an immigration matter" would not be privileged); *Behrens v. Hironimus*, 170 F.2d 627, 628 (4th Cir. 1948) ("The existence of the relation of attorney and client is not a privileged communication."); *accord Humphreys, Hutcheson & Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir. 1985) ("The attorney-client privilege only precludes disclosure

5

of *communications* between attorney and client and does not protect against disclosure of the facts underlying the communication."). The information *volunteered* by Attorney A in response to a case agent's request to confirm receipt of the preservation letter (as is common practice) consisted only of a general description of the matters on which he represented Wilson and the indication that he had no records relating to his representation of Wilson that would be subject to the preservation letter. Attorney A shared absolutely no *communications* that he had with Wilson.[5]

But the point remains that the defendants should be required to provide notice of intent to rely on an advice-of-counsel defense and that, if they intend to rely on such a defense, provide all discovery relevant to the defense in advance of trial.

## II. Conclusion

For all the reasons discussed above and in its motions, the United States respectfully requests that the Court grant the relief sought.

Respectfully submitted,

| | |
|---|---|
| JESSICA D. ABER<br>UNITED STATES ATTORNEY | COREY R. AMUNDSON<br>CHIEF |
| By:  */s Michael C. Moore*<br>Michael C. Moore<br>Assistant United States Attorney<br>Virginia State Bar Number 34229<br>919 East Main Street, Suite 1900<br>Richmond, VA 23219<br>Phone: (804) 819-5400<br>Telefax: (804) 771-2316<br>Email: Mike.C.Moore@usdoj.gov | By:  */s Rebecca M. Schuman*<br>Rebecca M. Schuman<br>Trial Attorney<br>Public Integrity Section<br>Criminal Division<br>1301 New York Ave, NW<br>Washington, DC 20004<br>Phone: (202) 514-1412<br>Email: Rebecca.Schuman@usdoj.gov |

---

[5] It also beggars belief that Attorney A, who has been practicing law in the Richmond metropolitan area since 1979, blithely ignored his obligations to Wilson during a telephone call with the case agent.