IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 3:21-cr-83-001-JAG |
| ) | |
| v. ) | |
| ) | |
| SUSAN MAY KEIM, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations contained in Count One of the Indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt:

1. Beginning at least as early as on or about June 26, 2013, and continuing through at least on or about October 12, 2018, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and within the jurisdiction of the Court, as well as elsewhere, defendants SUSAN MAY KEIM, RUSSELL JOHN KEIM SR., and RODNEY GALE WILSON, also known as "Captain," did unlawfully, knowingly, and intentionally, combine, conspire, confederate and agree with each other to commit the following offenses against the United States:

    a. to directly, indirectly, and corruptly give, offer, and promise a thing of value to a public official, with intent to influence an official act, in violation of Title 18, United States Code, Section 201(b)(1)(A); and

    b. to directly, indirectly, and corruptly demand, seek, receive, and accept, and agree to receive and accept something of value in return for being influenced in the

1

performance of an official act, in violation of Title 18, United States Code, Section 201(b)(2)(A).

2. The United States Department of the Army was a branch of the United States Department of Defense, which was part of the executive branch of the United States Government. The U.S. Army had soldiers and civilian employees stationed at the U.S. Army Garrison Fort Lee in Prince George County, Virginia, which is in the Eastern District of Virginia.

3. The U.S. Army contracted with Skookum Educational Company, a company based in the State of Washington, to maintain base operations at Fort Lee. Under the contract, Skookum provided parts and materials maintained in the base warehouse, including, but not limited to, batteries, toilet paper, ceiling tiles, and fire extinguishers, all of which it purchased from various subcontractors.

4. Pursuant to the contract with Skookum, the U.S. government reimbursed Skookum at cost for the parts and materials it purchased for Fort Lee.

5. Defendant SUSAN MAY KEIM was employed by Skookum as an Engineering Supply Supervisor at Skookum's Fort Lee facility. In this capacity, she managed inventory in the Fort Lee warehouse and oversaw the process by which Skookum purchased parts and materials to stock the warehouse. SUSAN KEIM supervised other Skookum employees, including Procurement Specialists (commonly referred to as "buyers") involved in the purchasing process. SUSAN KEIM's role included initiating the buying process for items needed in the warehouse by creating a purchase request, directing buyers to solicit bids for particular items, and reviewing credit card statements to reconcile them with records of purchase orders. SUSAN KEIM also functioned as a buyer herself on an as-needed basis.

6. Once SUSAN KEIM authorized buyers to solicit bids on warehouse supplies, the buyers solicited those bids over the Internet using various criteria including price. Skookum paid vendors that won bids for supplies and was then reimbursed by the Department of Defense. Orders for less than certain sums were not subject to this competitive bidding process. Once a vendor provided a specific part or material (such as batteries, ceiling tiles, or fire extinguishers), the vendor's name was entered into the database Skookum used for purchasing. Thereafter, that vendor's name would automatically populate as the vendor for subsequent purchases of the same item. SUSAN KEIM managed the system that set the inventory levels and automatically generated re-orders when the inventory for an item fell below certain levels.

7. In her capacity as a Skookum employee, SUSAN KEIM owed fiduciary duties to Skookum and to the United States Government. By virtue of her position, SUSAN KEIM was a person acting for and on behalf of the United States, and any department, agency or branch of Government thereof, in any official function, under and by authority of any such department, agency, and branch of Government. SUSAN KEIM, therefore, was a "public official" within the meaning of 18 U.S.C. § 201.

8. Defendant RUSSELL JOHN KEIM, SR., was SUSAN KEIM's spouse.

9. Defendant RODNEY GALE WILSON was a friend of RUSSELL KEIM and SUSAN KEIM since 2005. WILSON and RUSSELL KEIM belonged to the same motorcycle group, and WILSON, RUSSELL KEIM, and SUSAN KEIM regularly socialized at local bars and restaurants including during the time period of the conspiracy.

10. In 2013, WILSON created a company called C&L Supply to sell parts and materials to Skookum for use at Fort Lee. Skookum was C&L Supply's only customer. As the Engineer Supply

3

Supervisor, SUSAN KEIM, introduced C&L Supply as a vendor to sell parts and materials to Fort Lee and directed her employees to begin buying parts and materials from C&L Supply in 2013, which were both official acts. C&L Supply did not actually stock any items it sold to Skookum; rather, C&L Supply sourced the items from other suppliers. SUSAN KEIM and her employees continued to purchase parts and materials from C&L Supply through 2018, through over 500 transactions. Skookum paid at least $912,765.89 to C&L Supply, all of which was reimbursed by the United States Government.

11. SUSAN KEIM bought or directed her buyers to buy parts and materials from C&L Supply rather than directly from the company that stocked the items, including when the Fort Lee warehouse was already fully stocked with an item. C&L Supply sometimes sold the parts and materials it acquired to Skookum at a substantial markup.

12. For example, in January 2014, SUSAN KEIM, in her role as warehouse supervisor, purchased batteries for Skookum from C&L Supply, which was an official act. C&L Supply paid $758.16 for the batteries, and in turn, sold them to Skookum for $5,256. On or about January 3, 2014, SUSAN KEIM ordered the batteries herself directly from the battery supplier on behalf of C&L Supply and therefore knew how much C&L Supply had paid for them. SUSAN KEIM forwarded the invoice to WILSON on or about January 6, 2014, so he could then create a quote for C&L Supply to supply the batteries to Skookum. That quote became a purchase order for the batteries and reflected a total cost of $5,256; C&L Supply was paid that amount by Skookum, netting C&L Supply a profit of $4,487.84 on that one transaction. The United States Government then reimbursed Skookum $5,256.

13. Skookum had purchased batteries directly from the supplier listed above prior to January 2014, and has more recently purchased batteries directly from that supplier. On

4

January 6, 2014, SUSAN KEIM could have purchased the batteries on Skookum's behalf directly from the supplier for $758.16. Had she done that, Skookum would have charged the United States Government $758.16, rather than $5,256.

14. SUSAN KEIM provided to WILSON information about what items were needed for the warehouse and where to purchase those items to make WILSON more competitive than other vendors.

15. In exchange for SUSAN KEIM using her position as a public official to engage in official acts to purchase parts and materials from C&L Supply, RODNEY WILSON provided SUSAN KEIM and RUSSELL KEIM with things of value in the form of checks and cash payments and payments for renovations on SUSAN KEIM and RUSSELL KEIM's home within the Eastern District of Virginia. The value of the payments made to or for the benefit of SUSAN KEIM and RUSSELL KEIM totaled at least $92,039.79, including the following:

- In and around 2013, SUSAN KEIM and RUSSELL KEIM obtained at least $13,500 from a bank account held by C&L Amusements (consisting of checks made out by WILSON payable to RUSSELL KEIM) and at least $6,000 from a bank account held by C&L Supply (consisting of checks RUSSELL KEIM made payable to "Cash").[1]

    - One of the C&L Amusement checks, dated August 5, 2013, and payable to RUSSELL KEIM in the amount of $4,500, was endorsed by "Russell Keim and Susan Keim."

    - Another of the C&L Amusement checks, dated November 25, 2013, and payable to RUSSELL KEIM in the amount of $3,000, was endorsed "For Deposit Only" and deposited into the joint checking of Susan and Russell Keim with Fort Lee Federal Credit Union.

- In and around 2014, SUSAN KEIM and RUSSELL KEIM obtained at least $12,400 from a bank account held by C&L Amusements (consisting of checks made out by WILSON payable to RUSSELL KEIM) and at least $10,500 from a bank account held

---

[1] RUSSELL KEIM and WILSON were both authorized to sign checks on this account, notwithstanding the fact that RUSSELL KEIM was not employed by C&L Supply.

5

by C&L Supply (consisting of checks RUSSELL KEIM made payable to himself or to "Cash").

- On or about March 11, 2014, WILSON charged goods and services in an amount totaling approximately $2,148 at Lowe's to be delivered and installed at the KEIMS' residence using a credit card issued to C&L Supply.

- In and around 2015, SUSAN KEIM and RUSSELL KEIM obtained at least $4,500 from a bank account held by C&L Amusements (consisting of a check made out by WILSON payable to RUSSELL KEIM) and at least $8,100 from a bank account held by C&L Supply (consisting of checks RUSSELL KEIM made payable to "Cash").

- In and around 2016, SUSAN KEIM and RUSSELL KEIM obtained at least $1,000 from a bank account held by C&L Amusements (consisting of checks made out by WILSON payable to RUSSELL KEIM) and at least $7,373.62 from a bank account held by C&L Supply (consisting of checks RUSSELL KEIM made payable to himself or to "Cash").

- On or about December 30, 2016, WILSON charged goods and services in the amount of approximately $5,047.28 at Lowe's to be delivered and installed at the KEIMS' residence using a credit card issued to C&L Supply.

- In and around 2017, SUSAN KEIM and RUSSELL KEIM obtained at least $14,187.89 from a bank account held by C&L Amusements (consisting of checks made out by WILSON payable to RUSSELL KEIM).

- In and around June 2018, WILSON wrote two checks, totaling $7,283 and drawn on the C&L Supply bank account, to a contractor for renovations on the KEIMS' residence for their personal benefit.

Some, but not all, of these payments were made to RUSSELL KEIM for RUSSELL KEIM to deposit into ATMs as a favor to WILSON.

16. To conceal the conspiracy, WILSON falsely claimed that the payments to RUSSELL KEIM were for work he performed for C&L Supply. RUSSELL KEIM did not work for C&L Supply, nor did he serve as an officer, partner, member, director, or shareholder or have any ownership interest in C&L Supply or C&L Amusements.

17. To further conceal the conspiracy and the bribe payments they received from WILSON, SUSAN KEIM and RUSSELL KEIM failed to report those payments to the Internal Revenue Service

6

on their jointly filed tax returns even though those payments were part of their gross income and should have been reported in tax years 2013 through 2018.

18. To further conceal the conspiracy, SUSAN KEIM made false statements to law enforcement:

- On or about August 6, 2018, SUSAN KEIM falsely stated to federal agents from that she did not remember what WILSON looked like, was not certain that she had socialized with WILSON outside of work, and did not know whether her husband, RUSSELL KEIM, knew WILSON.

- In December 2019, SUSAN KEIM was again interviewed by federal agents and falsely claimed that she knew WILSON only as "Captain" and did not know his real name was "Rodney" until her husband RUSSELL KEIM told her WILSON's name after being interviewed by law enforcement in August 2018. She also falsely stated that she did not socialize with WILSON much outside of work.

19. Skookum became aware of the investigation that led to the indictment in this case and conducted its own internal investigation of the matter. As part of that investigation, Skookum accessed emails that SUSAN KEIM had exchanged with WILSON and were stored in SUSAN KEIM's Skookum account. Among those emails was a November 12, 2016, email in which SUSAN KEIM forwarded information about concert tickets to WILSON. On April 3, 2020, Skookum management interviewed SUSAN KEIM as part of that investigation. During that interview, SUSAN KEIM denied knowing WILSON outside of work and also denied sending him the November 12, 2016 email forwarding the concert tickets.

20. On April 10, 2020, Skookum management met with SUSAN KEIM again and terminated her. At that time, Skookum management delivered a letter to SUSAN KEIM stating that during the April 3, 2020 interview: "you were asked questions including many about your interactions with a specific vendor [WILSON]. Some of your responses were inconsistent against our findings." The letter went on to state that Skookum was terminating SUSAN KEIM because

Skookum has lost "trust and confidence in your ability to perform your duties ethically and with integrity." SUSAN KEIM offered no objection when this letter was delivered to her. After she packed her belongings, and on her way out of the Skookum offices, she told the Skookum Project Manager who had terminated her that she was sorry.

21. The United States was a victim of SUSAN KEIM, RUSSELL KEIM, and RODNEY WILSON's offenses.

22. At the times of the payments referenced in paragraph 15, SUSAN KEIM and RUSSELL KEIM were aware that most of those payments were made or facilitated by WILSON in exchange for SUSAN KEIM's official acts to purchase and direct her employees to purchase parts and materials for the Skookum warehouse from C&L Supply.

23. The actions taken by the defendant as described above were taken willfully, knowingly, and with the specific intent to violate the law. The defendant did not take those actions by accident, mistake, or with the belief that they did not violate the law.

24. This statement of facts recites facts necessary to provide an independent factual basis for the defendant's guilty plea. It does not necessarily recite all facts related to the defendant's involvement in the offense conduct or other criminal activity.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: _____
Michael C. Moore
Assistant United States Attorney

Corey R. Amundson
Chief, Public Integrity Section
U.S. Department of Justice

By: _____
Lauren Britsch Slater
Trial Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between myself and the United States, I stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Susan May Keim
Defendant

I am Susan May Keim's attorney. I have carefully reviewed the above Statement of Facts with her. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
C. David Whaley
Counsel for Defendant